## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS A. NIEVES CORTES,<br><br>                    Plaintiff,<br><br>      v.<br><br>TENGASCO INC., PETER E. SALAS,<br>MATTHEW K. BEHRENT, AND RICHARD M.<br>THON,<br>                    Defendants. | Case No.:<br><br><br>JURY TRIAL DEMANDED<br><br><br>**COMPLAINT FOR VIOLATIONS**<br>**OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### BACKGROUND

1.      This action concerns a proposed transaction announced on October 21, 2020, pursuant to which Tengasco, Inc. ("Tengasco" or the "Company") will merge with Riley Exploration – Permian, LLC ("REP") ("Proposed Transaction").

2.      On October 21, 2020, the Board of Directors of Tengasco (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, each share of REP common unit will be converted into 97.796467 shares of Tengasco common stock (the "Merger Consideration"). Upon closing of the Proposed Transaction, stockholders of REP will own approximately 95% of the outstanding common stock of Tengasco, while stockholders of Tengasco are expected to own approximately 5% of TSC.

3.      On November 12, 2020, in order to convince Tengasco's stockholders to vote in

favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of Tengasco stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Tengasco stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs

complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NYSE, which is headquartered in this District.

## THE PARTIES

9.     Plaintiff is, and has been continuously throughout all times relevant hereto, a Tengasco shareholder.

10.     Defendant Tengasco is a Delaware corporation and a party to the Merger Agreement.  Tengasco shares are traded on the NYSE  under the ticker symbol "TGC."

11.     Peter E. Salas is Chairman of the Board of the Company.

12.     Matthew K. Behren is a director of the Company.

13.     Richard M. Thon is a director of the Company.

## FACTS

14.     Tengasco is an independent oil and gas company that utilizes technologies to explore for, develop and produce domestic oil and natural gas reserves, and engage in well drilling activities.

15.     REP operates as an oil and gas company. REP focuses on acquisition, development and production of oil, natural gas, and natural gas liquid. REP operates in West Texas and Southeastern New Mexico.

16.     On October 21, 2020, Tengasco's Board caused the Company to enter into the Merger Agreement.

17.     The Merger Agreement provides that Tengasco has agreed with REP, a Delaware corporation, and Antman Sub, LLC, a newly-formed Delaware limited liability company and

wholly-owned subsidiary of Tengasco ("Merger Sub"). Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, Merger Sub will be merged with and into REP with REP surviving as a subsidiary of Tengasco (the "Merger").

18.     At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each REP common unit outstanding immediately prior to the effective time (excluding any REP common units held as treasury stock or held by any subsidiary of REP) will be converted solely into the right to receive: (i) a number of shares of TGC common stock equal to the Exchange Ratio (together with any cash to be paid in lieu of fractional shares of TGC common stock payable pursuant to the merger agreement) and (ii) any dividends or other distributions to which the holder of a REP common unit becomes entitled to upon the surrender of such REP common units in accordance with the merger agreement

19.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

20.     It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

21.     Section 5.04 of the Merger Agreement has a "no solicitation" clause that prevents Tengasco from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> (a)     From the date of this Agreement until the earlier to occur of the Effective Time or the termination of this Agreement in accordance with the terms set forth in ARTICLE VII, neither the Company, on the one hand, nor Parent, on the other hand, shall, and each shall cause their respective Subsidiaries not to, and shall not authorize or permit its or its respective Subsidiaries' directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, or other agents or advisors (with respect to any Person, the foregoing Persons are referred to herein as such Person's "**Representatives**") to, (i) directly or indirectly, solicit, initiate, or

knowingly take any action to facilitate or encourage the submission of any Takeover Proposal or the making of any proposal that could reasonably be expected to lead to any Takeover Proposal, (ii) conduct or engage in any discussions or negotiations with, disclose any non-public information relating to the Company or Parent or any of their respective Subsidiaries to, afford access to the business, properties, assets, books, or records of the Company or Parent or any of their respective Subsidiaries to, or knowingly assist, participate in, facilitate, or encourage any effort by, any third party (or its potential sources of financing) that is seeking to make, or has made, any Takeover Proposal; (iii) (A) amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or Parent, as applicable, or any of their respective Subsidiaries, except, in the case of Parent, where the Parent Board makes a good faith determination, after consultation with outside legal counsel, that the failure to waive any such standstill provision would be inconsistent with its fiduciary duties under applicable law, or (B) approve any transaction under, or any third party becoming an "interested stockholder" under, any applicable takeover statute; or (iv) enter into any agreement in principle, letter of intent, term sheet, acquisition agreement, merger agreement, option agreement, joint venture agreement, partnership agreement, or other Contract relating to any Takeover Proposal or publicly propose to take any of the actions described in foregoing clauses (i) through (iv). Neither the Company Board shall effect a Company Adverse Recommendation Change, nor shall the Parent Board effect a Parent Adverse Recommendation Change. The Company on the one hand, and Parent, on the other hand, shall, and shall cause their respective Subsidiaries to cease immediately and cause to be terminated, and shall not authorize or knowingly permit any of its or their Representatives to continue, any and all existing activities, discussions, or negotiations, if any, with any third party conducted prior to the date hereof with respect to any Takeover Proposal and shall use its reasonable best efforts to cause any such third party (or its agents or advisors) in possession of non-public information in respect of the Company or Parent, as applicable, and any of their respective Subsidiaries that was furnished by or on behalf of such party or its respective Subsidiaries to return or destroy (and confirm destruction of) all such information.

22.      In addition, the Termination Expense Reimbursement Section of the Merger Agreement requires Tengasco to pay a $475,000 "termination expense reimbursement" in the event this agreement is terminated by Tengasco and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive and unduly restrictive to Tengasco's ability to consider other offers.

23.      Defendants filed the Registration Statement with the SEC in connection with the

Proposed Transaction.

24.     First, the Registration Statement omits entirely Tengasco's, REP's, and the pro forma combined company's financial projections.

25.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the company's financial advisor rendered in support of any fairness opinion.

26.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor Roth Capital Partners, LLC ("Roth") in connection with the Proposed Transaction.

27.     With respect to Roth's *Comparable Company Analysis*, the Registration Statement fails to include (i) the individual metrics for each company observed and (ii) the inputs and assumptions underlying the selection of the EBITDA Multiples ranging from 4.1x to 5.1x and 2.7x to 4.7x.  This information must be disclosed to make the Registration Statement not materially misleading to Tengasco stockholders and provide stockholders with full and relevant information in considering how to vote.

28.     With respect to Roth's *Comparable Transaction Analysis*, the Registration Statement fails to include the individual metrics for each transaction observed.  This information must be disclosed to make the Registration Statement not materially misleading to Tengasco stockholders and provide stockholders with full and relevant information in considering how to vote.

29.     With respect to Roth's *Net Asset Value Analysis*, the Registration Statement fails

to include: (i) the individual inputs and assumptions underlying the range of discount rates of 9%, 10%, and 15%, (ii) the present value of the pre-tax future cash flows that REP could be expected to generate from its existing base of estimated proved reserves, as provided by the management of REP on NYMEX Strip as of June 30, 2020 and by Netherland, Sewell & Associates, Inc. ("NSAI") on SEC pricing as of September 30, 2019, (ii) undeveloped acreage value, less (ii) net working capital, (iii) net current asset retirement obligations, and (iv) total debt outstanding.   This information must be disclosed to make the Registration Statement not materially misleading to Tengasco stockholders and provide stockholders with full and relevant information in considering how to vote.

30.     With respect to Roth's *Contribution Analysis*, the Registration Statement fails to include (i) all line items used to calculate 2019 Adjusted EBITDA and (ii) TTM Adjusted EBITDA.  The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.  This information must be disclosed to make the Registration Statement not materially misleading to Tengasco stockholders and provide stockholders with full and relevant information in considering how to vote.

31.     Third, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" ("DADW") provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

32.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

## COUNT I

## (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

34.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36.    Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

38.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

39.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

## (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

44.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 2, 2020               **MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*

11